In re William O. FORD, Jr., Debtor.

Julanne I. FORD, Plaintiff,

v.

William O. FORD, Jr., Defendant.

Bankruptcy No. 390–30671–P7.
Adv. No. 92–3227–P.

United States Bankruptcy Court,
D. Oregon.

Aug. 5, 1993.

Danny H. Gerlt, Portland, OR, for plaintiff.

Virgil E. Dugger, Portland, OR, for defendant.

Rosalie K. Murphy, Dept. of Justice, Civ. Div., Washington, D.C., for intervenor.

MEMORANDUM OPINION

ELIZABETH L. PERRIS, Bankruptcy Judge.

The plaintiff creditor had a viable objection to the debtor's receiving a discharge but was unable to timely pursue the objection because the debtor neither scheduled the debt nor notified the plaintiff of the

bankruptcy until 19 months after the bankruptcy was filed. The plaintiff seeks a judgment declaring the debt nondischargeable under § 523(a)(3)(A) [1], and denying the debtor's discharge under § 727. The United States intervened pursuant to 28 U.S.C. § 2403(a) because Constitutional issues arose. I have jurisdiction under 28 U.S.C. § 1334(b), 157(a) and Local District Court Rule 2101–1. This is a core proceeding over which I may enter a final judgment. 28 U.S.C. § 157(b)(2)(I) and (J).

## FACTS

The plaintiff has a prepetition money judgment against the debtor. Sometime in late 1988 or early 1989 the debtor spoke with the plaintiff and advised her that he intended to file bankruptcy. The debtor filed his bankruptcy petition on February 8, 1990, but his schedules failed to list the plaintiff as a creditor, and the debtor did not advise the plaintiff that he had commenced a bankruptcy case. The testimony at trial convinces me that the debtor's failure to schedule the plaintiff was intentional. I also find that the debtor intentionally omitted assets from his schedules, including tools, equipment, bank accounts and the cash surrender value of a life insurance policy.

■ On February 16, 1990, the clerk sent a notice to all listed creditors advising that the debtor had commenced a bankruptcy case. The notice contained a statement that creditors need not file proofs of claim because there were no assets from which a dividend could be paid. The notice also stated that if it later appeared there were assets from which a dividend could be paid, creditors would be notified and given an opportunity to file their claims. No additional assets were located by the trustee, and therefore anyone attempting to file a proof of claim would have had the document returned unfiled.[2] A discharge was

entered on June 1, 1990, and the case was closed. The plaintiff did not have notice nor actual knowledge of the debtor's bankruptcy until September of 1991 [3].

On April 24, 1992 the debtor filed, and the court granted, an *ex parte* motion to reopen the case to add the plaintiff as a creditor. The debtor then filed an amended schedule adding the plaintiff as an unsecured creditor. On May 22, 1992, the plaintiff filed her complaint objecting to the debtor's discharge and seeking a determination of the dischargeability of the debt under § 523(a)(3)(A).

## LEGAL ANALYSIS

1. *Is § 523(a)(3)(A) Applicable in a No-Asset, No Claims–Bar Date Case ?*

■ The United States and the plaintiff contend that either the debt is nondischargeable under Section 523(a)(3)(A), or will become so if the order permitting the amendment of schedules is vacated. Section 523(a)(3)(A) excepts from discharge those debts

neither listed nor scheduled ... in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing....

Section 523(a)(3)(A) is inapplicable to a no asset, no claim-bar case. *See Beezley v. California Land Title Company (In re Beezley),* 994 F.2d 1433 (9th Cir.1993). That is because in such a case there is no time within which a creditor must file a proof of claim. *Beezley* at 1436 (O'Scannlain, concurring) [quoting *In re Walendy,* 118 B.R. 774, 775 (Bankr.C.D.Ca.1990) ]. I am bound by *Beezley,* and therefore conclude that where, as here, creditors have

---

1. Unless otherwise indicated, all statutory references are to title 11 of the United States Code.

2. In this district, the clerk will not accept proofs of claim in no-asset cases.

3. Though at some point prior to filing his bankruptcy petition the debtor advised the plaintiff of his intent to commence a bankruptcy case in the future, that alone is insufficient to constitute "notice or actual knowledge" that the debtor actually had commenced a case. *See In re Bosse,* 122 B.R. 410 (Bankr.C.D.Ca.1990).

been advised under Fed.R.Bankr.P. 3002(c)(5) that they need not file proofs of claim, under its plain language § 523(a)(3)(A) is inapplicable to except an unscheduled debt from discharge.

There is no other statutory basis under § 523 for excepting the debt from the discharge of § 727(a). Therefore, the plaintiff's debt is within the scope of the discharge of § 727, which provides:

"(b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from *all debts* that arose before the date of the order for relief under this chapter,...." (emphasis added).

### 2. *Should the Order of Discharge be Revoked?*

■ Since a discharge order has already been entered, the question presented is whether I should revoke that order. The plaintiff urges that, had she been aware of the case, she would have been able to timely and successfully object to the entry of a discharge. In essence, the plaintiff argues that the debtor fraudulently procured his discharge by intentionally omitting her from the schedules and keeping her in the dark about the case, thereby preempting a successful challenge to his discharge.

Congress has enacted a statute which covers the situation. Section 727(d) provides that:

On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.

Congress has also enacted a statute which makes a fraudulently obtained discharge uncontestable after one year. Section § 727(e) provides that a request for revocation of a discharge on the grounds of fraud must be made within one year after such discharge is granted. An often-quoted authority, *Collier on Bankruptcy* ¶ 727.16 (15th ed. 1993) explains that the time limitation

is not a mere statute of limitations, but an essential prerequisite to the proceeding. The year undoubtedly begins to run from the date of entry of the order of discharge, and not from the discovery of the fraud. It was once thought that request to the court to vary or annul the order may be made after that time, though a court could properly refuse such an application when clearly made for the purpose of avoiding this limitation. But Bankruptcy Rule 9024, while making Fed.R.Civ.P. 60 applicable to bankruptcy cases, specifically provides that such application of the Civil Rule does not permit extension of the time allowed by section 727 of the Code for the filing of a complaint to revoke a discharge. The 1983 Advisory Committee note to Rule 9024 states that this makes clear that Rule 60(b) affords no basis for circumvention of the time limitations prescribed by section 727 for the commencement of any proceeding to revoke a discharge.

4 King, *Collier on Bankruptcy* ¶ 727.16 (15th ed. 1993) at p. 727–113.

A recent Ninth Circuit case, *In re Cisneros*, 994 F.2d 1462 (9th Cir.1993), if read broadly enough, could arguably support the proposition that I can set aside the discharge on the grounds of mistake under Fed.R.Bankr.P. 9024 and Fed.R.Civ.P. 60(b). In *Cisneros*, the debtor was granted a discharge under § 1328(a) despite the fact that one of the creditors entitled to payment under the plan had not been paid by the trustee in accordance with the plan. The payment was not made because the trustee was unaware that the creditor had filed a proof of claim. The normal procedure called for the court clerk to notify the trustee of all timely filed claims, but "for reasons that remain obscure" the trustee did not receive notice of the IRS claim. The court, unaware of the unpaid claim, entered a discharge under § 1328(a).

The creditor sought to vacate the discharge under Fed.R.Bankr.P. 9024 and

Fed.R.Civ.P. 60(b) on the grounds that it was entered by mistake. The debtors responded by contending that Congress limited the grounds for setting aside a chapter 13 discharge to fraud under § 1328(e), which provides that

> the court may revoke such discharge *only if—*
> (1) *such discharge was obtained through fraud;* and
> (2) the requesting party did not know of such fraud until after such discharge was granted. (emphasis added).

Notwithstanding the statutory limitation to revocation of discharges "only if" obtained by fraud, the *Cisneros* panel found "no reason to believe that Congress intended section 1328(e) to prevent the bankruptcy court from correcting its own mistakes" using Fed.R.Civ.P. 60(b). *Id.* at 1466. The panel went on to state that "[h]ad the court been apprised of the actual facts, it would never have entered the [discharge] order. In our view, this is precisely the sort of 'mistake' or 'inadvertence' that Rule 60(b) was intended to reach."

Read broadly, the above language arguably supports the proposition that courts may freely use Fed.R. 60(b) to vacate discharges. I do not believe that the Ninth Circuit intended that *Cisneros* be so broadly construed, as doing so would render meaningless the limitation period of § 727(e). Instead, I read *Cisneros* as a reaffirmation of a court's inherent power to correct its own clerical errors. *See, e.g., Marks v. Brown,* 136 F. 168, 169 (9th Cir. 1905); *In re Riso,* 57 B.R. 789, 793 (D.N.H. 1986).

The instant case does not involve the type of administrative lapse found in *Cisneros.* Instead, it involves actual fraud in procuring the discharge. While it could be argued that a discharge procured by fraud should be entitled to less dignity than one procured by mistake, that is not a policy decision for the judiciary to make. Congress has spoken on the question of fraud, and for whatever reasons has seen fit to make discharges uncontestable on the grounds of fraud after one year. It is not my place to question what Congress has decreed, provided such a decree is permitted by the Constitution.

3. *Does Due Process Require Excepting the Debt from the Operation of § 727?*

 Had the plaintiff received timely notice of the case, she would have succeeded in objecting to the debtor's discharge. Section 727(a)(4)(A) requires the denial of a discharge if: (1) the debtor knowingly and fraudulently made a false oath; and (2) the false oath related to a material fact. *In re Aubry,* 111 B.R. 268, 274 (9th Cir. BAP 1990). The value of omitted assets need not be significant to be material. *Fitzsimmons v. Stokes (In re Fitzsimmons),* Adv. No. 89–3139 (Bankr.D.Or. Sept. 10, 1990), *aff'd.* BAP No. OR–91–1023–MeAsJ (9th Cir. BAP Sept. 3, 1991). If relevant to discovery of past transactions, materiality may be present. *Id.* Detriment to creditors need not be shown. *Id.*

The testimony at trial convinces me that the plaintiff would have been able to establish those elements and obtain denial of the discharge if given the opportunity. The debtor intentionally omitted assets from his schedules, including tools, equipment, bank accounts and the cash surrender value of a life insurance policy. The debtor also knowingly and fraudulently made a false oath in failing to list the plaintiff.

The debtor, by concealing his bankruptcy from the plaintiff for a long-enough period of time, assured his discharge would be uncontestable on the basis of fraud. That concealment also deprived the plaintiff of any opportunity to protect her debt by challenging the debtor's discharge. The question remaining is thus whether discharging the plaintiff's debt is permitted by the United States Constitution.

 Unsecured creditors are entitled to procedural due process protection. *Credit Alliance Corporation v. Dunning–Ray Insurance Agency, Inc. (In re Blumer),* 66 B.R. 109, 114 (9th Cir. BAP 1986), *aff'd. without opinion* 826 F.2d 1069 (9th Cir. 1987); *See also Tulsa Professional Collection Serv., Inc. v. Pope,* 485 U.S. 478, 485, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988)

(unsecured claim against a probate estate is a constitutionally protected property interest).

In a judicial proceeding, procedural due process requires that individualized notice be given before rights can be affected. *Texaco, Inc. v. Short*, 454 U.S. 516, 534–35, 102 S.Ct. 781, 794–95, 70 L.Ed.2d 738 (1982); *Mullane v. Central Hanover Bank & Trust Co., supra*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

The United States Supreme Court has found that the fundamental requirement of due process, the right to be heard, is meaningless without notice. *Mullane v. Central Hanover Bank & Trust Co., supra*, 339 U.S. 306, 314, 70 S.Ct. 652, 657. 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' 339 U.S. at 314, 70 S.Ct. at 657.

*L. Tribe, American Constitutional Law* at 114 (2nd ed. 1988).

The due process infirmity in the instant case is that the plaintiff had no notice that her debt was subject to discharge in bankruptcy, and therefore had no opportunity to challenge that discharge. *See In re Reese*, 133 B.R. 245, 247 (Bankr.M.D.Fla.1991). Had the plaintiff received such timely notice, I am convinced that she would have succeeded in preventing the discharge of her debt or, if the discharge had already been entered, obtaining revocation of the discharge.

The plaintiff's right to protect her debt from discharge was valuable. The debtor made no attempt to give plaintiff notice of the bankruptcy, and effectively prevented the plaintiff from coming into court to protect her rights. Declaring plaintiff's debt discharged under such circumstances violates the procedural due process guaranteed by the Fifth Amendment of the United States Constitution, which requires notice and an opportunity to be heard. *See In re*

*Spring Valley Farms, Inc.*, 863 F.2d 832, 835 (11th Cir.1989).

Applying § 727 to discharge the plaintiff's claim would constitute an impermissible violation of the plaintiff's due process rights. I do not find § 727 to be unconstitutional in all applications, but only invalid as applied to discharge the plaintiff's debt under the circumstances of this case. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318–20, 70 S.Ct. 652, 659–60, 94 L.Ed. 865 (1950) (upholding a statutory notice provision as constitutionally valid as to one class of claimants but invalid as to a different class); *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 95, 102 S.Ct. 2858, 2884, 73 L.Ed.2d 598 (1982) (White, dissenting) ("Even if the Court is correct that such a state law claim cannot be heard by a bankruptcy judge, there is no basis for doing more than declaring the [statutory jurisdictional grant] unconstitutional as applied to the claim against Marathon, leaving the section otherwise intact.")

## CONCLUSION

Since this case is a no-asset, no claims-bar date case, § 523(a)(3)(A) is inapplicable to except the plaintiff's debt from discharge. Nor can the debtor's discharge be revoked for fraud, as the time within which such an action must be commenced had passed by the time the complaint was filed. However, since the plaintiff's debt was unscheduled and she received neither knowledge nor notice of the case in time to successfully challenge the debtor's discharge, procedural due process requires that the plaintiff's debt remain unaffected by the Order of Discharge entered on June 1, 1990.

I do not decide whether, either in the absence of prejudice or in the event of a different type of prejudice, the discharge of the plaintiff's debt would offend due process. My ruling is limited to the type of prejudice presented by this case; i.e., the loss of the right to either bring a meritorious action to deny the debtor a discharge or seek revocation of the discharge as a

result of lack of notice or knowledge of the bankruptcy.

The foregoing constitute my findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052.